IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Eastern Tools & Equipment, Inc., | Case No. 3:08 CV 2633 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| John Lyerla, Sr., | |
| Defendant. | |

### INTRODUCTION

This is an action on an account. The matter was tried to the Court on August 10 and August 14, 2009. After taking evidence on ten disputed issues, the Court now rules as follows. A summary of the ten claims is attached as an Appendix.

### GENERAL STATEMENT

Under Ohio law, "an action on an account is appropriate where the parties have conducted a series of transactions, for which a balance remains to be paid. To succeed in an action on an account, the plaintiff must prove both all the elements of the contract and that the contract is one that involves transactions usually the subject of a book account." *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 604 (6th Cir. 2005) (internal citations omitted). Further, "in the absence of a contractual relationship between two parties, an action on an account cannot be maintained by one against the other. An action on an account *does not alleviate the plaintiff's burden of showing that the defendant was bound to pay the amounts listed on the account*." *Hiram College v. Courtad*, 162 Ohio App. 3d 642, 645 (11th Dist. 2005) (internal citations omitted) (emphasis added).

In this case, some of the disputed issues cannot be analyzed as an account due to poor record keeping. Plaintiff has pled in the alternative a breach of contract claim. Therefore, the question of contract performance by both parties comes into play as the Court analyzes each disputed issue.

### DISPUTED ISSUES

1. On September 16, 2005, Congden, a customer of Defendant, purchased an item through Plaintiff's credit card payment system. Typically, when a customer of Defendant wished to make a credit card purchase, Defendant would contact Plaintiff via telephone with the customer's credit card number, Plaintiff would contact the bank to determine if the customer's account contained sufficient funds, and Plaintiff would then notify Defendant whether the transaction had or had not been authorized.

Plaintiff's purchase order for the transaction in question (Ex. A1) contains a credit card number, an authorization number, the hand-written words "paid in full," and an internal reference number "257." The purchase order also contains Congden's signature. Despite this purchase order, Plaintiff alleges it never received payment of $4,120 from the bank. Plaintiff points to its bank statement (Ex. A2), which contains the handwritten note "#257 missing."

Defendant alleges that Amy, Plaintiff's employee in charge of credit card transactions, failed to input the transaction into Plaintiff's computer system, later causing the transaction to be labeled "missing" on Plaintiff's bank statement. Defendant contacted Plaintiff on several occasions regarding the transaction in question, but could not get a straight answer regarding the transaction from Plaintiff (Ex. 3).

Plaintiff bears the burden of proof that Defendant is bound to pay $4,120. Simply alleging payment was never received and pointing to a handwritten note on a bank statement does not satisfy

Plaintiff's burden. Considering Plaintiff is in possession of Congden's credit card number for the transaction and an authorization code from the bank, Plaintiff has failed to establish that Defendant is responsible to pay the amount due on this transaction.

2. Plaintiff alleges Defendant owes $11,066 from combined "chargeback debits" to Defendant's account. A "chargeback" involves Defendant's customers purchasing items directly through Plaintiff's credit card system. However, when the customer later disputes the charge after Plaintiff's bank account has already been credited, Plaintiff's bank account is then debited if the customer wins the dispute. Due to Plaintiff's internal bookkeeping, Defendant's account is then debited the amount of the chargeback. Notably, all funds are credited and debited directly from Plaintiff's bank account.

This issue involves three chargeback debits in August 2005 ($5,520 for Agelis, $4,650 for Franze, and $896 for Stacy). **Defendant agrees to the $5,520 chargeback involving Agelis**, but disputes the chargebacks involving Franze and Stacy.

<u>Franze</u> - This bill of sale (Ex. B1) contains a credit card number, authorization code, internal reference code, and Franze's signature. Plaintiff has attached a copy of Franze's credit card statement from May 17, 2005, containing a "re-billing of previously issued credit" in the amount of $4,650 (Ex. B2). Plaintiff alleges Franze later refused payment because of this re-billing.

Defendant argues that Franze's credit card statement establishes that Plaintiff must have received payment. If Franze was re-billed for the previously issued credit, he must have paid for the purchase, later disputed and won that charge (the "credit"), and then Plaintiff must have disputed the chargeback and won (the "rebilling").

3

However, Franze's bank statement only establishes that his account was debited. Plaintiff has not put forth any evidence that its own account was debited. Plaintiff attached a fax (Ex. B3) that lists Franze's purchase as an outstanding credit card chargeback. However, this is simply Plaintiff's internal bookkeeping, and no bank records have been produced to demonstrate Plaintiff's account was actually debited. Plaintiff has also failed to establish Defendant, and not Franze, is liable for this charge.

Stacy - Plaintiff alleges Defendant owes $5,150 from a chargeback of Stacy, a former partner of Defendant. Plaintiff attaches a fax (Ex. B6) from June 28, 2005, indicating Plaintiff and Defendant won a dispute involving the Stacy purchase. Because the Stacy chargeback relates to a transaction with Defendant's predecessor partnership, Plaintiff seeks only the outstanding $896 that is still due and owing in the account of the previous partnership (Ex. B8). Plaintiff points to a copy of its bank statement (Ex. B7) that contains both a credit and a debit in the amount of $5,150, and alleges it never received payment from Stacy. Plaintiff admits it could not find any paperwork regarding the Stacy purchase, and also indicates American Express is still investigating the charge.

First, this account is not in the name of this Defendant. Second, simply pointing to the numbers on Plaintiff's bank statement, while the numbers may be the same, does not establish those numbers represent Stacy's purchase. Third, Plaintiff has failed to show this Defendant is liable for this purchase.

3. Plaintiff alleges Defendant never reimbursed a freight charge "prepaid" by Plaintiff. Defendant purchased several items from Plaintiff in anticipation of a hurricane, and requested the goods be shipped by train to Florida. Defendant testified that Plaintiff's employee, Irma Paz, promised the items would be delivered by June 7, 2006. Defendant produced documents indicating

4

he was in Florida on June 7 (Ex. E2). Defendant testified the goods purchased did not arrive at the destination on time, forcing him after two weeks to leave Florida without the goods.

Irma Paz testified that she never promises an arrival date because she has no control over the shipments after the goods are delivered to the carrier. Plaintiff produced documentation (Ex. E1 pp. 6-7) indicating Defendant purchased the goods and that Plaintiff incurred shipping costs in the amount of $3,348. Defendant produced no documents indicating such a date was ever promised, or that Defendant ever disputed the charge by calling or writing. Plaintiff has met its burden and **Defendant owes the $3,348 freight charge**.

4. Plaintiff claims an unpaid balance of $896 from 2004 (see No. 2 above re: Stacy); Defendant claims he is owed a credit of $9,528 for that year. Defendant's company was not formed until 2005. If any amount is owed, or to be credited, it belongs to the former partnership. Both the claim and credit are denied.

5. Plaintiff claims a freight charge of $545 from February 2006. Defendant claims defective equipment was returned at Plaintiff's cost, not his. The goods were returned under a warranty claim and were sent "collect." Plaintiff has a written warranty policy that requires pre-approval before goods are returned. Defendant offers no evidence that he obtained pre-shipment authorization to return the goods and, significantly, no evidence that he disputed the charge at the time. Plaintiff has met its burden and **Defendant owes the $545 freight charge**.

6. This claim arises from a July 2006 charge for one hundred generators at a per unit price of $220. Defendant claims he was quoted a price of $195. Such a notation appears on the invoice (Ex. H1). There are also invoices showing a unit price of $195 (Ex. H2) both before and after the July invoice. Plaintiff claims the lower price on other invoices reflected a quantity discount. The Court

5

finds this dispute a close call. The series of invoices and close time frame for the purchase of these generators give the edge to Defendant's position and this claim is denied.

7. This issue involves a purchase paid for with $3,000 cash, reflected in line 3 of the receipt (I-1). However, Plaintiff argues a clerical error occurred while this purchase was input into Plaintiff's computer system. Plaintiff's log indicates Defendant's account was credited $10,200 for the payment. Defendant argues the numbers $3,000 and $10,200 are too far off to be a mere clerical error.

Plaintiff bears the burden to prove this $10,200 was a result of clerical error. Plaintiff has produced the receipt for $3,000 (Ex. I1) and Defendant's account indicating a $10,200 credit. Defendant has produced no documentation, and did not remember making a $10,200 payment. Defendant's only argument is that the numbers are just "too off." Plaintiff has met its burden, and **Defendant owes the $7,200 difference**.

8. Defendant disputes Plaintiff's accounting for two invoices (Ex. C1 and C2) for $48,500 and $49,500 respectively. Neither Plaintiff nor Defendant dispute that the invoices were paid; rather, Defendant argues a $45,000 cash payment related to these invoices is not reflected. Both Ex. C1 and C-2 contain a prominently displayed "PAID" stamp generated by Plaintiff's computer accounting system. As Plaintiff's current accountant, Anson Yeung, testified, once an invoice has been paid in full, the computer automatically marks "PAID" on the invoice.

Defendant argues he made a $45,000 cash payment not reflected on the two invoices, and that without this $45,000 cash payment, neither of the invoices would have been paid in full.

Plaintiff also submitted an "Invoice History" document (Ex. C3) that purports to demonstrate how payments by Defendant were applied to these two invoices. This history demonstrates that

6

invoice C1 was brought to a zero balance through a series of separate payments and that invoice C2 was brought to a zero balance through a single payment.

Defendant's claim that a $45,000 payment was made on both these accounts is not reflected anywhere in the record before this Court. Defendant has produced no receipt or bank statement demonstrating a $45,000 withdrawal. Ex. C3 demonstrates that invoice C2 was paid in one payment, meaning the $45,000 would have been applied to C1. However, C1 reflects several smaller payments, none of which reflect a payment of $45,000.

Defendant has the burden of demonstrating any excess amount paid on invoices C1 and C2. Defendant fails to meet that burden. Thus, Defendant is not credited $45,000.

9. Defendant has submitted a copy of three checks (Ex. D) totaling $11,200 that Defendant claims were never credited to his account. Defendant has only produced the front side of these checks, each of which is made out to Eastern Tools. Plaintiff argues that Eastern Tools never received any of these checks.

In light of the failure of either party to provide the back-side of these checks, this Court ordered the issuing bank, TD Bank, N.A (Doc. Nos. 28-29) to provide a copy of both the front and back of the second check (see Ex. D). The bank copy shows the check was endorsed, and credited to Plaintiff's account. Plaintiff argues in its post-trial brief that the endorsement on the bank copy should not be dispositive on the issue of whether Plaintiff received the three checks. To support its argument, Plaintiff provides dissimilar examples of endorsement stamps it used in the course of its business. Plaintiff's argument is unpersuasive. It is not clear from Plaintiff's brief whether the provided stamp examples were used in 2005 when the three checks were drafted. What is clear from

7

the trial testimony is that Plaintiff's personnel are not the same as in 2005 when the account disputes first arose.

Defendant has the burden of proving the affirmative defense of payment. *Wolf Auto v. Rally Auto Parts, Inc.*, 95 Ohio App.3d 130, 135 (1994). Defendant sought to meet this burden by offering the three checks into evidence. The Court made it clear at the trial that confirmation from the Bank of New Hampshire of the deposit of its check would create a presumption that all three checks were properly deposited with Plaintiff. Plaintiff continues to argue that its records did not reflect these deposits.[1] The Court notes however that Ms. Yeung was not employed with Plaintiff at the time these deposits were made (TR 15-16), and her affidavit does not refute that someone employed by Plaintiff could have misapplied or misappropriated these funds.

In any event, the presumption remains that these bank checks, made out to Eastern Tools, were deposited in Plaintiff's account and the burden rested with Plaintiff to rebut Defendant's proven affirmative defense of payment. Plaintiff has not done so.

Therefore, **Defendant is credited the amount of all three checks for a total of $11,200**.

10. Defendant alleges Plaintiff did not accurately credit his account for certain purchases. The payment summary contains two lines labeled "check payment" in the amount of $15,000 and

---

[1] Plaintiff filed a Supplemental Post Trial Brief on the issue of the three checks in Exhibit D (Doc. No. 31). Plaintiff attached an affidavit from Kit-Yen ("Anson") Yeung contending these checks never made their way to Plaintiff's coffers. The Court then held a telephone conference with Plaintiff's counsel and the Defendant, informing both parties that, if they wished to further investigate what happened to these checks, they could have two weeks to supplement the record (Doc. No. 35). On October 1, 2009, Plaintiff's counsel informed the Court that he and the Defendant agreed that they did not need to investigate or supplement the record any further. Defendant contacted the Court later that day confirming this, while also clearly contemplating doing some investigative legwork on his own.

$30,000 (Ex. K2). The payment summary also contains a line labeled "cash payment" in the amount of $15,000 for a total payment of $60,000 (Ex. K2).

Defendant testified this transaction was made in anticipation of an upcoming hurricane. Defendant ordered certain equipment and traveled to Florida with two cashier checks (Ex. K3) in the amount of $15,000 and $30,000 respectively. Defendant contends these two cashier checks are reflected in the first two lines of the payment summary (Ex. K2).

Defendant also alleges he brought $60,000 cash to Florida in anticipation of further purchases while in Florida. Defendant alleges $15,000 of that $60,000 is reflected in line three of the payment summary (Ex. K2). Defendant further alleges he provided the remaining $45,000 to Plaintiff as a payment on the total balance of his account because he did not want to carry $45,000 cash around with him. Defendant contends this $45,000 payment is reflected in the cash receipts (Ex. K1), but was never reflected on his account.

Plaintiff contends the cash receipts (K1) are for the two cashier checks (K3), and testified it was company policy to provide a receipt marked "cash" for cashier checks. Therefore, Plaintiff argues the two cashier checks are accurately reflected in lines 1 and 2 of the payment summary (Ex. K2). Neither Plaintiff nor Defendant testified that a receipt was provided for the cash payment reflected in line 3 of the payment summary.

Once again, no back detail has been provided for the cashier checks. Therefore the Court does not know whether those checks were ever cashed or deposited. Further, it is clear Defendant came to Florida with some "cash," as reflected in line 3 of the payment summary and the handwritten note on Ex. K7. The only dispute is the amount of cash Defendant provided to Plaintiff.

Defendant bears the burden of proving the $45,000 was not accurately reflected on his account. Defendant points to the two cash receipts (Ex. K1) as evidence that he provided the extra

9

$45,000 after making the original purchase reflected in the payment summary (Ex. K2). It is puzzling why Plaintiff would provide Defendant with two separate cash receipts, if as Defendant testified, Defendant made a single payment of the remaining $45,000. The fact that the two cashier's checks and the two cash receipts reflect the same dollar amounts weighs heavily in favor of Plaintiff, combined with the testimony of Yueng that it is company policy to provide a cash receipt for cashier's checks.

Defendant fails to meet his burden of proof, and is not credited for the alleged $45,000 cash payment.

## CONCLUSION

Having resolved each of the disputed issues as set forth above, the bottom line is that **Defendant owes Plaintiff Five Thousand Four Hundred Thirteen Dollars ($5,413)**. Because of the less than ideal paperwork and record keeping by both parties, it would be impossible to select a date certain for any prejudgment interest calculation and therefore no such interest is awarded. Each party is to bear its own costs.

IT IS SO ORDERED.

                                                  s/ *Jack Zouhary*
                                                  JACK ZOUHARY
                                                  U. S. DISTRICT JUDGE

                                                  October 14, 2009